IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| THOMAS MORE SOCIETY, an Illinois Not-for-Profit Corporation, | ) ) ) | FILED: JANUARY 19, 2009 09CV329 |
| Plaintiff, | ) ) | JUDGE LEINENWEBER |
| vs. | ) ) | No.   MAGISTRATE JUDGE KEYS |
| DENISE MACKURA, | ) ) | TC |
| Defendant. | ) ) ) | |

COMPLAINT FOR DECLARATORY JUDGMENT UNDER 28 U.S.C. § 2201

Plaintiff, by its undersigned counsel, hereby complains of defendant as follows:

<u>PARTIES</u>

1.      Plaintiff Thomas More Society is an Illinois not-for-profit corporation with its principal office at Chicago, Illinois.  Thomas More Society is a public interest law firm that engages in litigation, counseling, and public education on substantive abortion law, abortion protest law, and related "pro-life" topics.

2.      Defendant Denise Mackura ("Ms. Mackura" or "Mackura") was employed full-time in the Chicago office of plaintiff Thomas More Society, serving as Executive Director and Legal Counsel from January 1, 2008, through August, 2008, when her resignation took effect. After resigning from plaintiff's employment, Ms. Mackura took a college teaching job in or about Philadelphia, Pennsylvania.  Plaintiff now believes that Ms. Mackura's permanent residence is in the city of South Euclid, a suburb near the city of Cleveland, Cuyahoga County, in the State of Ohio.

JURISDICTION & VENUE

3.      This Court has jurisdiction over this matter under the Declaratory Judgment Act, 28 U.S.C. § 2201, including exclusive jurisdiction under the Copyright Act, 17 U.S.C. §101, *et seq.*, and supplemental jurisdiction under 28 U.S.C. § 1367.  Venue is proper in the Northern District of Illinois as the claims for relief arose here, plaintiff's headquarters office is located here, and the defendant's employment – which this case concerns – took place here.

FACTS

4.      On or about November 1, 2007, Thomas More Society and Ms. Mackura made, executed and delivered a contract for indefinite employment as the Society's Executive Director, at an annual salary of $100,000 ("the Agreement").  The contract is attached as Exhibit 1.

5.      During her employment, the Society provided Ms. Mackura with regular salary and benefits, including health insurance, attorney licensing fees, professional association fees, and other expense reimbursements.  Mackura was treated for tax purposes as an employee and not as an independent contractor, and she remained its Executive Director throughout the entirety of her tenure.

6.      While in the employ of the Society, Ms. Mackura drafted a manuscript on abortion law and related matters, which were subjects encompassed within the Society's mission and bound up with Ms. Mackura's job duties which included public communications and media relations.

7.      Ms. Mackura drafted said manuscript in substantial part during her employment and in the Society's office in Chicago while using the Society's supplies and equipment including one of its computers, its copier, paper, and other materials.  The Society procured these facilities and equipment and purchased these materials and supplies using charitable monies

2

donated to it by members of the public to advance the Society's charitable purposes. Also during her employ, Ms. Mackura used the Society's credit card to purchase in excess of $1,000 in books from Amazon, Borders and other suppliers, most or all of which she apparently took with her upon leaving its employ, which plaintiff believes that she used in whole or in part in the research and writing of her manuscript.

8. Ms. Mackura caused the solicitation of one or more charitable donations to the Society from one or more third parties to finance the Society's publication of the manuscript. Thus said manuscript was a "work for hire" belonging to the Society.

9. Very late in July, 2008, prior to her resignation, Ms. Mackura notified Thomas Brejcha, President and Chief Counsel of the Thomas More Society, that she had accepted a position as a visiting professor for the Fall 2008 semester at Eastern University outside of Philadelphia, Pennsylvania. According to Ms. Mackura herself, her new position precluding her continuing her full-time employment with the Thomas More Society.

10. The parties' Agreement provided in pertinent part as follows: "Severance in the amount of four months salary will be provided should this employment agreement be terminated by Thomas More Society, after a six month employment period. If the Executive Director voluntarily terminates her employment the matter of severance pay will be negotiable." Ms. Mackura was not terminated by the Thomas More Society. Nor did the parties negotiate any agreement with respect to severance pay for Ms. Mackura. The Society paid her $10,000 cash when she left, to be "grossed up" to more than $15,000 (to provide for taxes and other withholdings); it paid her health insurance through December 31st at a cost of some $2,400; it paid her moving expenses at a cost of approximately $1,000; it let her take her computer, which the Society had purchased for her at a cost of about $1,400. While the Society expected

that Ms. Mackura would continue to render certain services for its benefit, in August 2008, Ms. Mackura notified Thomas More Society board member Ann Scheidler that she (Ms. Mackura) had not been able to render services, would be unable to render additional services, and thus ceased to do any further work for Thomas More Society after leaving the Society's employ.

11.     Plaintiff believes that Ms. Mackura is currently soliciting final comments and suggestions on the manuscript from outside reviewers in preparation for its publication, without any notice to, or input from, or permission of the Thomas More Society.

12.     Ms. Mackura and/or her agents and/or attorneys now reject the claim of the Thomas More Society that the manuscript constitutes a "work for hire" and they refuse even to provide the Society with a copy of the manuscript.  The Society does not know whether or when Ms. Mackura would register the manuscript with the Copyright Office, or if said registration would properly attribute authorship and ownership to the Society.  Thomas More Society has a legitimate and urgent concern about protecting and preserving this charitable asset, as it is answerable to its donors and to the public for the safekeeping of such valuable assets created, developed, or acquired by means of donated funds, facilities, equipment and supplies.

13.     Ms. Mackura and/or her agents and/or attorneys now further claim that Mackura is due in excess of $25,000 from Thomas More Society as "severance pay," pursuant to the provisions of the Agreement even though she voluntarily resigned her employment.

14.     Over the past month, Mackura and/or her agents and/or attorneys have refused mediation and threatened to file a lawsuit for such "severance pay" in Cleveland, Ohio, even though her employment and her voluntary termination of employment occurred in Chicago, Illinois.

15.     On Friday, January 16, 2009, Mackura's agent forwarded to Thomas More Society a "draft press release," dated Tuesday, January 20, 2009, purporting to announce the filing of a suit that day by Mackura in Cuyahoga County Common Pleas Court, Cuyahoga County, Ohio.

## FIRST CLAIM FOR RELIEF

16.     Plaintiff repeats and realleges each and every allegation set forth in paragaraphs 1 through 15 inclusive with the same force and effect as if fully set forth.

17.     There is an actual controversy between the parties concerning the ownership of the manuscript that Ms. Mackura prepared during her employment with the Society, as plaintiff claims it is a "work for hire" that belongs to it, whereas Ms. Mackura has rejected that claim and is apparently proceeding to publish said manuscript with the Society's consent or authorization or compensation.

18.     The Court should declare as a matter of law that said manuscript is indeed a "work for hire" that belongs to the Society and enter such orders as will protect the Society's rights of ownership to this valuable asset, thereby protecting the rights and interests of its donors.

## SECOND CLAIM FOR RELIEF

19.     Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 18 inclusive with the same force and effect as if fully set forth.

20.     There is an actual controversy between the parties concerning Ms. Mackura's claim that, pursuant to the parties' Agreement, she is entitled to in excess of $25,000 in alleged "severance pay."  Plaintiff denies said claim.

21.     The Court should declare that Ms. Mackura is not entitled to any award of "severance pay" pursuant to the Agreement or on any other alleged ground, as she voluntarily resigned her employment with the Society.

WHEREFORE, plaintiff Thomas More Society prays that:

A.     This Court enter a judgment and decree, pursuant to the First Claim for Relief, declaring that Thomas More Society is the author of the manuscript and order that a copy of said manuscript be delivered to Thomas More Society, and grant it all other necessary or appropriate relief to protect its ownership interest in said "work for hire";

B.     This Court enter a judgment and decree, pursuant to the Second Claim for Relief, declaring that Thomas More Society has no contractual obligation to Mackura, pursuant to the parties' Agreement or on any other basis, to pay her "severance pay" in connection with her employment with Thomas More Society, and grant the Society all other necessary or appropriate relief upon said premises; and

C.     This Court grant such other relief as shall be just

/s/Jason R. Craddock
Jason R. Craddock
Attorney at Law
Box 1514
Sauk Village, Illinois 60412
Tel. 708-662-0945
Fax 708-753-1242